UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Criminal No.: 06-042-01 (JDB) |
| | : | |
| v. | : | |
| | : | |
| LESLEY MERISE, | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing.

## I.  Procedural History

On August 31, 2007, defendant Lesley Merise pleaded guilty to one count of hostage taking in violation of 18 U.S.C. § 1203, in case 06-042-01 (JDB), in connection with the abduction and holding for ransom of a nine-year old American girl from September 26, 2005, to October 4, 2005 in the Republic of Haiti, within the extraterritorial jurisdiction of the United States, and, pursuant to 18 U.S.C. § 3238, within the venue of the United States District Court for the District of Columbia.  Merise was the last conspirator of four to enter a plea.

It is instructive to review the procedural history of the cases of the other conspirators.  On October 7, 2005, the grand jury returned an indictment charging defendants Yves-Jean Louis and Ernso Louis with hostage taking in connection with the same offense.  On December 16, 2005, in case 05-376-01, 02 (JDB), Yves Jean Louis and Ernso Louis each pleaded guilty to one count of hostage-taking in violation of 18 U.S.C. § 1203, with cooperation provisions. On February 15, 2006, the grand jury indicted defendants Lesley Merise and Phito Cajuste for hostage-taking, in a related separate case.  On May 4, 2006, Phito Cajuste entered a guilty plea in case 06-042-02 (JDB) to one

count of hostage-taking, with a cooperation provision. On about February 24, 2007, Merise was arrested in Haiti and waived extradition. Merise pleaded guilty to hostage taking in case 06-042-01 (JDB) on August 31, 2007.

## II.  The Facts

On September 26, 2005, at approximately 2 a.m., defendant Merise and the three other hostage-takers invaded the home of O.G., located in the Route des Freres section of Port au Prince, Haiti. O.G. had been asleep in the home she occupied with her parents. O.G. was a nine-year-old girl and is a citizen of the United States, having been born in Boston, Massachusetts in 1995.

Defendant Merise and the other hostage-takers had advance knowledge of the layout of the house from coconspirator Yves Jean Louis, who by virtue of his past employment by the family of O.G., was able to convey detailed information to the three other hostage-takers concerning the physical layout of the house. Yves Jean Louis, who was also a distant relative of the mother of O.G., was angry at the family of O.G.. Yves Jean Louis believed that they had underpaid him in his employment and that they had promised him other financial rewards and then declined to provide him with further funds or items of value, thus providing a motive for the hostage-taking.

Upon entry on the property, Yves Jean Louis distracted the dogs on the property by giving them food. While Yves Jean Louis was keeping the dogs occupied, Merise, Phito Cajuste and Ernso Louis entered the home through a previously unlocked entrance. Having fed the dogs, Yves Jean Louis rejoined the others in the house. The four hostage-takers wore masks. Armed with machetes and a fake gun, the group proceeded to the bedroom of the parents of O.G.. Once in the bedroom, Merise, Cajuste, and Ernso Louis bound the father to prevent him from moving. One of the hostage-

2

takers pointed a fake gun at the father of O.G.[1]  The hostage-takers bound the mother as well.  The hostage-takers stole approximately one thousand US dollars in local currency, a watch and a pair of athletic shoes.

Next, the hostage-takers went to the room where O.G. was sleeping.  They covered the mouth of O.G., picked her up and carried her out of the house, without waking any of the siblings.  The hostage-takers had started to tape O.G.'s mouth shut, but O.G. explained that she would die if they did that because she could not breathe through her nose.  O.G. suffers from asthma and a heart condition.  They threatened O.G. during the abduction that they would kill her if she did not stay quiet.  The hostage-takers also pointed the fake gun at O.G.'s head to threaten her.  Merise and the other hostage-takers stole O.G.'s father's car and drove it away as the getaway car.  After the abduction, a face mask was located at the perimeter of the home.  Ropes were recovered after having been cut from the wrists of the parents.  A machete was located on the property which had not been there prior to the crime.

The hostage-takers then took O.G. to a location and held her there until approximately 10 p.m. that night.  While at that location, although she was blindfolded for much of the time, O.G. heard clearly the voice of defendant Yves Jean Louis.  It began to storm.  The structure at this location was a shack that had little protection from the elements.  The hostage-takers decided to move O.G. to another location.

Two of the hostage-takers, Merise and Ernso Louis, next moved O.G. to a mountainous remote location, accessible only by hiking on foot over rough terrain for several hours, in the

---

[1] The accounts of the hostage-takers are not consistent on who wielded the fake gun.  It appears likely different conspirators had it at different times.

Ghantier area of Haiti.  O.G. sustained scrapes and scratches during the trips.  They held O.G. hostage in an abandoned animal shed in an isolated area.  O.G. became physically ill from the inadequate and unsafe food and water.  Large dangerous insects infested the shed where O.G. was held.  O.G. was distraught and cried frequently.

Over a period of days, Merise and other hostage-takers proceeded to make ransom demands of O.G.'s family by telephone.  Merise was the chief ransom negotiator.  Cajuste also made at least one ransom call.  The initial demand was $200,000 in U.S. currency.  Over the course of the negotiations, which occurred by telephone, the demand amount was eventually lowered to $50,000.  The family tried to raise the money but could come up with only an amount of approximately $8,000.  The hostage-takers would not accept that low an amount.

Ernso Louis stayed in a nearby building and cared for O.G.  Other hostage-takers returned as needed to that location to put O.G. on the phone to show proof of life during the ransom negotiations.   The hostage-takers repeatedly told O.G. that if she made too much noise, tried to leave, or told anyone that she had been kidnaped, she and her family would be killed.  After a number of days, defendant Ernso Louis decided to permit O.G. to go outside to play in the nearby area.

A young adult shepherd who resided in the area noticed the arrival of the new child and befriended her.  That shepherd engaged O.G. in conversation and established a level of trust with her.  That shepherd eventually learned from O.G. that she had been kidnaped.  Taking a piece of charcoal from an old fire pit, the shepherd persuaded O.G. to write on a scrap of paper the name of her father and her telephone number.

Through great effort and crossing miles of very rough terrain, the shepherd managed to get

4

to a police station to provide the authorities with this information. Because of the lack of resources and of telecommunications infrastructure, the shepherd had to travel and labor for more than two days to get to the proper authorities to relay the name and number the child had written in charcoal on the scrap of paper. In light of the situation, the authorities decided that the best approach was for that shepherd to return to the scene and arrange a way for O.G. to go outside where the authorities would wait. On October 4, 2005, the law enforcement team climbed up the mountain for the rescue effort. The shepherd entered the area and went to the house where Ernso Louis was staying. The shepherd entered the house and engaged Ernso Louis in conversation to distract him until an opportunity arose to signal O.G. to go outside. When the shepherd signaled her, O.G. bolted. Outside, law enforcement, including the Haitian National Police ("HNP") and the United Nations Civil Police ("UN CivPol"), was waiting. Then law enforcement entered the building where Ernso Louis was inside and detained him. O.G. was ill and had to hospitalized for a number of days after her rescue. O.G. had a fever, was dehydrated and had poor kidney function.

After O.G. was rescued, the locations where she had been held and where Ernso Louis was found were searched. A real-looking imitation handgun and a glove were found there. Ernso Louis was found in possession of the athletic shoes as well as a binder and a wallet belonging to O.G.'s father, all of which had been stolen from O.G.'s house the night of the kidnaping.

Agents of the FBI spoke with O.G., as well as members of her family. O.G. informed them that she knew the identity of one of her kidnappers. O.G. related that, although she had been blindfolded for much of the ordeal, she clearly recognized the voice of Yves Jean Louis. O.G. was familiar with his voice from having heard it when he worked at her family's home. The family of O.G. provided some identifying data and law enforcement was able to locate defendant Yves Jean

Louis.

Yves Jean Louis was positively identified by O.G. after she reviewed a stack of photographs of men. Upon observing a photograph of Yves Jean Louis, O.G. identified him by name as a member of the group that kidnaped her and held her hostage. Ernso Louis was positively identified by O.G. after she reviewed a stack of photographs of men. Upon observing a photograph of Ernso Louis, O.G. identified him by name as a member of the group that kidnaped her and held her hostage.

Yves Jean Louis was apprehended by law enforcement at his home a few days later. The FBI interviewed Yves Jean Louis and he gave a statement confessing to his participation in the kidnaping and hostage-taking. Yves Jean Louis also implicated his coconspirators including Merise, Ernso Louis and Cajuste. Yves Jean Louis subsequently identified Cajuste from a photo array. The FBI interviewed Ernso Louis, who gave a statement confessing to his participation in the kidnaping and hostage-taking. Ernso Louis also implicated his coconspirators, Merise, Cajuste and Yves-Jean Louis. Ernso Louis later identified Cajuste from a photo array. On December 16, 2005, in case 05-376, Yves Jean Louis and Ernso Louis each pleaded guilty to one count of hostage-taking in violation of 18 U.S.C. § 1203.

Defendant Cajuste was subsequently arrested in Haiti. On January 29, 2006, two agents of the FBI interviewed Cajuste at the prison in Port au Prince, Haiti. Cajuste related that Merise and Yves Jean Louis approached him and asked him to take part in their plot to kidnap "Olivia" and take her to the top of a mountain to hold her for ransom. Cajuste had been acquainted with the Merise for about four years. Merise offered him payment of approximately $ 8,000 U.S. dollars for his part in the kidnaping. Cajuste admitted to the FBI that he went to the house with the others, that he was

6

armed with a machete and wore a mask, and that he participated in restraining the parents while one of the others snatched the sleeping child from her bed. On May 4, 2006, Phito Cajuste entered a guilty plea to one count of hostage-taking.

Defendant Merise was arrested in Haiti in February 2007. On or about February 27, 2007, two agents of the FBI interviewed Merise at the prison in Port au Prince, Haiti. Merise initially claimed he had been a lookout at the house, but then he admitted he was a full participant in the hostage-taking and that he entered the house with the other hostage-takers. Moreover, defendant Merise was identified by name by all three conspirators, Yves-Jean Louis, Ernso Louis and Phito Cajuste, as the man with whom they had committed the hostage-taking of the little girl. Both Ernso Louis and Cajuste had been acquainted with Merise for more than four years. Yves-Jean Louis had been acquainted with Merise for many years.

## II. Victim Impact

The child victim, O.G., and her family have suffered serious and extensive psychological trauma as a result of this offense. O.G., her parents and her siblings have completed victim impact statements that are attached hereto as Exhibits A-F.[2]

## III. The Role of Defendant Merise, Motion for the Third Point Reduction in Offense Level, and the Government's Recommendation

As to the role of defendant Merise in the offense, as outlined above, Merise was an instigator and main player. Merise together with Yves Jean Louis planned the hostage-taking, with Yves Jean Louis drawing on his inside information about the family. Merise and Yves Jean Louis recruited Cajuste and Ernso Louis to assist in the abduction. Merise and Ernso Louis took the child to the

---

[2] These statements are redacted to protect the identity of the child victim and her family.

remote location where she was held, where Ernso Louis remained to care for her.  Merise and Yves Jean Louis went there at times to check on Ernso Louis and the child hostage.  Merise was the lead ransom negotiator.

After hostage-taking, defendant Merise was a fugitive for many months.  When he was finally apprehended on or about February 24, 2007, he did cooperate with law enforcement in giving a statement.  Merise voluntarily waived extradition to the United States.  He first appeared in the nearest federal court to his port of entry, Miami, and was removed to Washington, D.C.  He first appeared before this Court on April 10, 2007.  Due to circumstances beyond the control of Merise, the government or the Court, there was  a delay of approximately three months to resolve competency matters.  Merise entered a guilty plea soon after resolution of these mattters.  On August 31, 2007, he pled guilty to one count of hostage taking.  Merise accepted responsibility early and the government hereby moves to award him the third point of reduction from his Sentencing Guidelines level.

Under the Sentencing Guidelines, Merise's adjusted offense level is 41 minus three points for acceptance of responsibility, resulting in a level 38, with a range of 235-293 months.  This was a horrifying crime for which the victim and her family continue to suffer psychological pain every day.  Merise, together with Yves Jean Louis, instigated and played a main part in this evil scheme. While the gravity of the offense certainly warrants a long sentence, the government recognizes that defendant Merise entered an early plea and saved the government the considerable resources which would have been involved in a trial of this matter.  Based on its weighing of all the relevant considerations, the United States respectfully submits to the Court that the sentence to be imposed should be in the middle of the applicable range of 235-293 months.

8

WHEREFORE, the United States respectfully requests that this Court impose a sentence in the middle of the applicable range of 235-293 months.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
D.C. BAR NUMBER 498610

__/s/_____
Jeanne M. Hauch
D.C. Bar Number 426585
National Security Section
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 514-5776 telephone
(202) 307-6059 facsimile
Jeanne.M.Hauch@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was served by US Mail on counsel for the defendant:

Edward C. Sussman, Esq.
601 Pennsylvania Avenue, N.W., Suite 900- South Building
Washington, D.C.  20004

on this _3rd  day of December, 2007.


_____/s/_____
JEANNE M. HAUCH
Assistant United States Attorney