UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA            :

            v.                      :        CR. NO.  06-42-01 (JDB)

LESLEY MERISE                       :

<u>DEFENDANT'S MEMORANDUM IN AID OF SENTENCING</u>

The defendant, having entered a plea of guilty to the offense of Hostage Taking, a

violation of 18 U.S.C. §1203(a), will appear before this honorable court for sentencing on

December 10, 2007.  The parties have reviewed the presentence report and find it accurate in all

material aspects.  Counsel respectfully requests that the court consider the following

memorandum in deciding the appropriate sentence.

1. Mr. Merise was the fourth of four defendants to be brought to this country in connection

with the 2005 kidnaping of a nine year old child in Port Au Prince, Haiti. Following examination

and treatment to ensure his competency, the defendant entered a plea agreement that provided

minimal concessions from the government.  The government has agreed to recommend a three

level downward adjustment for acceptance of responsibility and not to seek any upward

departure. The defendant has agreed not to request or to seek a "departure or any decreases from

the applicable guideline range . . ." (¶5,p.4s).  Because the court's responsibility under the

applicable sentencing statue is far more extensive than merely computing and applying the

guidelines, see <u>United States v. Rita</u> (citation omitted), counsel believes it is entirely appropriate

1

-and consistent with the plea bargain-  to provide the court with the type of information needed to impose an "appropriate" sentence as required by 18 U.S.C. §3553(a) .

2.  Mr. Merise is a 29 year old Haitian national.  His homeland is the poorest nation in the Western Hemisphere.  Eighty percent (80%) of the population lives under the poverty line; 54% in *abject* poverty.  More than two-thirds of the labor force does not have a formal job. The life expectancy of a Haitian male  is 55 years of age.[1]  As the presentence report indicates, ¶54, Mr. Merise, with a ninth grade education, had no job.  He arose every day with the need to scratch out a living.  Some days he was able to find work; other days he was not.  It is not difficult to imagine that the "safety net" in Haiti has substantial gaps.

3. With respect to the nature and the details of the offense, counsel can add little.  The kidnaping of a child is hideous in every way; and clearly, a nightmare for the child and the child's parents. Nor, given the facts, is there any reason to dispute the financial and emotional impact reported by the victim and her family.  Given, however, the defendant's background, mental status and sophistication, it is not very likely that he either could foresee these type of consequences or intended them.  The long run effects of his actions were, in counsel's view, simply beyond the scope of Mr. Merise; just as he has little understanding of his own mental condition, or what it requires.   In his view, once the offense was completed, it would be, for all purposes, done.  In a similar vein, it is equally clear that the Mr. Merise and his accomplices had a totally inflated idea regarding the financial resources of the Geneus family.  For them, the Geneus' wealth seemed bottomless.

4. Mr. Merise accepts responsibility for his acts and represents that while he was involved

---

[1]All information was obtained from the Central Intelligence Agency's <u>World Fact Book</u>.

in the "taking" of the child, he did not conceive the plan. He followed the directions of Yves Louis who portrayed the crime as not only an opportunity to obtain money, but as payback for the manner in which the Geneus family had treated him (Louis). The defendant believes that his agreement to participate in the offense has effectively ended his life. Given his understanding of life expectancy in Haiti, this is readily understandable.

5. The defendant was brought to this country substantially later than the three other defendants. It was counsel's understanding that those defendants has already entered plea agreements and were prepared to testify against Mr. Merise. Significantly, following his arrest in Haiti, he fully admitted his involvement in the offense. Obviously, once brought to the United States, the defendant could do nothing (other than plead) to help make the government's case. In its sentencing memorandum concerning defendant Cajuste, the government has recommended a three level cooperation departure and a mid range sentence. This would place Cajuste, and presumably the other two defendants, at approximately 190 months.[2] With respect to Merise, the government has also recommended a mid-range sentence. A similar computation for the defendant would place him at 264 months; a six year spread. While the order and timing of arrest clearly plays some role in the outcome of criminal cases, it does not appear to be one the factors enumerated in the sentencing statute. Nor does it seem to be a reason for such a disparity. This is especially true in a case in which the government has not really argued a substantial difference in the roles of the various defendants. See p.9, Cajuste, Government's Memorandum in Aid of Sentencing.

5. There is no question that federal statutes provide jurisdiction and venue over this

_____

[2] The halfway range between 168 and 210 months.

offense. It is equally certain that the victim was not targeted because she was a U.S. national.

The family was selected because it was perceived to be rich.  Because the victim was born in this

country and our government appears to have little faith in the Haitian judicial system, the

defendant will be incarcerated for an extended period in the United States.  While Mr. Merise has

relatives in Florida, he has not had any contact with them since his arrival.[3]  Likely, the cost of

travel will prohibit any Haitian friends or relatives from visiting him; even if they could get visas.

Nobody is likely to put money into his canteen account. There will be few, if any, long distance

phone calls.  It is an anomaly that Mr. Merise will be incarcerated in a country that was not

entered for criminal purposes or even a factor in the selection of the victim. Following the

completion of his lengthy sentence, he will be returned to Haiti; where his age will place him in

the older part of the population.; almost certainly a severe social and economic disadvantage.

6. Mr. Merise reports that he was treated for mental problems in Haiti.  The Bureau of

Prisons mental health professionals diagnosed him as schizophrenic and depressed.  He is

receiving anti-psychotic and anti-depressant medication at the jail.  When questioned by counsel,

the defendant did not know what schizophrenia or depression was.[4] He recalls receiving psycho

tropic medication for a short time in Haiti but has no idea what he was given.  The defendant

relates that he was hospitalized because he "wasn't right in his head."  Follow up care was

apparently non-existent.

---

[3]The defendant would like to be incarcerated in Florida with the hope that he might have some relationship with relatives that are believed to be located in the Miami area.

[4]While there were some questions whether the defendant exaggerated any of his symptoms, it was believed that he did suffer from mental illness. How much untreated mental illness affected his judgment and conduct is impossible to say.

7.  In fashioning an appropriate sentence for the defendant, counsel urges the court not to forget the cultural differences that are at the center of this case.  Kidnaping for ransom is virtually unknown in this country.[5]  The overwhelming number of *kidnaping* cases arise from domestic disputes. Consequently, the depth of information that is required to accurately formulate sentencing guidelines is likely absent.   The presumption of reliability that generally accompanies them, might be substantially weaker in this situation.

8. The guidelines in this case were relatively clear and the subject of agreement between the defendant and the government.  Under the terms of the agreement, the defendant can only ask for the bottom of the guideline range.   Clearly, the court's obligations go well beyond this and counsel hopes that he has provided information which the court will find useful in discharging its responsibility.

9. Counsel and the defendant thank the court in advance for its consideration in this matter.

Respectfully submitted,

_____/s/_____
Edward C. Sussman No. 174623
Counsel for Defendant Merise
Suite 900 - South Building
601 Pennsylvania Avenue N.W.
Washington, D.C. 20004
(202) 737-7110

_____

[5]Anecdotally, counsel has been involved in only one such case in his career.

-5-

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing memorandum was served electronically on all interested parties, this 3rd day of December, 2007.


_____/s/_____
Edward C. Sussman