**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **UNITED STATES OF AMERICA** |
| **v.** |
| **LESLEY MERISE,** |
| **Defendant.** |

**Criminal Action No. 06-42-1 (JDB)**

**MEMORANDUM OPINION**

Lesley Merise moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, arguing that the Court failed to consider his deportable status at sentencing, that his trial counsel was ineffective, and that his plea was made unknowingly and unintelligently. Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Mot. to Vacate") [ECF No. 53] at 13–16.[1] For the reasons that follow, Merise's motion will be dismissed as untimely under 28 U.S.C. § 2255(f).

**BACKGROUND**

In 2005, Merise and three others kidnapped a nine-year-old American citizen who was living with her family in Port-au-Prince, Haiti. Statement of the Offenses [ECF No. 36-1] at 1. The four hostage-takers, wearing masks and brandishing weapons including a machete and a fake firearm, abducted the girl from her bed after invading the family's home. Id. at 1, 4. They then took the girl to a remote mountain location where she was held for more than a week while the hostage-takers demanded ransom money from her family. Id. at 1–2.

---

[1] For ease of reference, the Court cites to the PDF pagination of Merise's motion.

Merise was arrested in Haiti in February 2007.  After he waived extradition, he was brought to the United States and arraigned.  Minute Entry, April 10, 2007; Bench Warrant Returned Executed [ECF No. 19].  In August 2007, Merise pled guilty to one count of Hostage Taking and Aiding and Abetting and Causing an Act to be Done, in violation of 18 U.S.C. §§ 1203(a) and 2. Plea Agreement [ECF No. 36] at 1; Indict. [ECF No. 1] at 1–2.  Merise was sentenced to 238 months' imprisonment, a sentence at the lower end of the advisory guidelines range.  Judgment [ECF No. 44] at 1–2; Amended Statement of Reasons [ECF No. 48] at 1–2.  Judgment was entered on December 12, 2007.  Judgment at 1.

In the eleven and a half years that followed, Merise never appealed his conviction, nor did he ever challenge his sentence under § 2255.  Then, on June 10, 2019, Merise filed his first § 2255 motion, which is the motion now before this Court.  Mot. to Vacate at 1.  The Court ordered the government to respond.  Minute Order, Oct. 22, 2019.  The government filed a brief in opposition, arguing that Merise's motion is untimely.  See United States' Opp'n to Def.'s Pro Se Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Opp'n Br.") [ECF No. 56].  Merise filed a reply.  See Def.'s Reply to Gov't's Resp. for a 28 U.S.C. § 2255 Mot. ("Reply Br.") [ECF No. 57].  The motion is now ripe for consideration.

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act ("AEDPA") authorizes federal prisoners to move to vacate, set aside, or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, . . . or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  A prisoner's ability to bring such a motion is subject to a strict one-year time limitation triggered by "the latest of," as relevant here, (1) "the date on which the judgment of conviction becomes final," (2) "the date on which the right asserted was initially

recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," or (3) "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."  Id. § 2255(f)(1), (3), (4).[2]

## ANALYSIS

Merise's § 2255 motion raises four grounds for relief: (1) the court failed to consider his deportable status at sentencing, depriving him of due process; (2) his trial counsel was deficient in failing to consult with him concerning a direct appeal; (3) his trial counsel was deficient in failing to investigate and present mitigating evidence regarding Merise's mental health and family circumstances at sentencing; and (4) he made his plea unknowingly and unintelligently.  Mot. to Vacate at 13–16.  All of these arguments, however, are barred by the one-year time limitation on the filing of § 2255 motions and therefore must be dismissed as untimely.  See 28 U.S.C. § 2255(f).

"In most cases, the operative date from which the limitation period is measured will be the one [in § 2255(f)(1)]: the date on which the judgment of conviction becomes final."  Dodd v. United States, 545 U.S. 353, 357 (2005) (internal quotation marks omitted).  Merise's § 2255 motion is untimely under § 2255(f)(1) because it was filed more than one year (indeed, more than eleven years) after Merise's conviction became final in December 2007.  Merise recognizes that the time for him to file a § 2255 motion technically expired in December 2008.  Mot. to Vacate at 18.  Merise makes a variety of arguments, however, in an effort to overcome this hurdle.  He argues that the statute of limitations should be equitably tolled; that his first ground for relief is timely under § 2255(f)(4); that the actual innocence exception to AEDPA's statute of limitations applies;

---

[2] Merise does not argue that there was an "impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States."  28 U.S.C. § 2255(f)(2).

and that the one-year time limitation is an unconstitutional suspension of the writ of habeas corpus. See Mot. to Vacate at 5, 23.  The Court will address each of these arguments in turn.

Equitable Tolling

Merise argues that AEDPA's statute of limitations should be equitably tolled, citing the facts that he is a noncitizen unfamiliar with U.S. law, he has a mental condition that makes him timid and shy, there was no reasoned appellate court opinion, and his attorney advised him that there was nothing else for him to do and that he should not talk with other prisoners or jailhouse lawyers about his case.  Mot. to Vacate at 18, 21–23.

AEDPA's statute of limitations can, in appropriate circumstances, be equitably tolled.  See Holland v. Florida, 560 U.S. 631, 645 (2010).   However, "equitable tolling is appropriate only if a petitioner shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'"  Head v. Wilson, 792 F.3d 102, 106 (D.C. Cir. 2015) (quoting United States v. Baxter, 761 F.3d 17, 30–31 (D.C. Cir. 2014)).  The delay "cannot be a product of [a petitioner's] own misunderstanding of the law or tactical mistakes in litigation."  Menominee Indian Tribe of Wis. v. United States, 764 F.3d 51, 58 (D.C. Cir. 2014).  When a deadline is missed as a result of a "garden variety claim of excusable neglect" or a "simple miscalculation," equitable tolling is not warranted.  Holland, 560 U.S. at 651 (internal quotation marks omitted).

The circumstances that Merise describes, even collectively, do not justify equitable tolling of the one-year limitation to file a § 2255 motion.  Neither Merise's unfamiliarity with U.S. law nor the lack of guidance he received regarding post-conviction relief supports equitable tolling. See United States v. Cicero, 214 F.3d 199, 203 (D.C. Cir. 2000) ("The prisoner's ignorance of the law or unfamiliarity with the legal process will not excuse his untimely filing, nor will a lack of

representation during the applicable filing period."). And although equitable tolling may be justified where "an attorney's behavior [is] so outrageous or so incompetent as to render it extraordinary," United States v. Pollard, 416 F.3d 48, 56 (D.C. Cir. 2005) (quotation omitted), the fact, if true, that Merise's attorney advised him "that there was nothing else for him to do, and not to talk to other prisoners about the case," Mot. to Vacate at 22, does not rise to the level of an "extraordinary circumstance." Cf. White v. Patton, 644 Fed. App'x 817, 818 (10th Cir. 2016) (unpublished order) (holding that counsel's failure to advise petitioner of his right to file a habeas petition did not justify equitable tolling).

Finally, even if there had been extraordinary circumstances that prevented Merise from timely filing his § 2255 motion, he has not shown that he diligently pursued his rights over the last decade and thus he does not qualify for equitable tolling. See Gordon v. Franklin, 456 F. App'x 739, 742 (10th Cir. 2012) (unpublished order) (noting that "[e]ven if the assistance of [petitioner's] counsel were so deficient as to meet the 'extraordinary circumstance' element of equitable tolling, [petitioner] has not shown he pursued his claims with diligence"—he "offers no explanation for his failure to pursue his claim for over a decade"); see also Rao v. Baker, 898 F.2d 191, 198 (D.C. Cir. 1990) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." (quotation omitted)).

Section 2255(f)(4)

In addition to the equitable tolling defense, Merise contends that his first ground for relief—that "[t]he court failed to consider the consequences of [his] deportable status" in sentencing—is timely under § 2255(f)(4) because "the operative fact, the passage of the First Step Act of 2018, occurred within the last year." Mot. to Vacate at 5, 13. As the Court understands it, Merise's position is that the First Step Act involves a series of criminal justice reforms that are

retroactively applicable to most prisoners, but not to prisoners who are, like Merise, deportable, and that the Court's failure to consider this disparity of treatment at sentencing creates a due process and equal protection issue. Id. at 18.

But section 2255(f)(4) states that the statute of limitations shall run from "the date on which the facts supporting the claim or claims presented could have been discovered." 28 U.S.C. § 2255(f)(4) (emphasis added). An intervening change in law does not constitute a new "fact" under § 2255(f)(4). See Whiteside v. United States, 775 F.3d 180, 183 (4th Cir. 2014) (collecting cases); see also United States v. Thompson, No. 16-CR-30038, 2020 WL 1274217, at *3 (C.D. Ill. Mar. 17, 2020) ("[T]he enactment of the First Step Act is not a 'fact' within the meaning of § 2255(f)(4)."). "Construing every substantive change in the law as a new 'fact' for the purposes of § 2255(f)(4) would render meaningless the limitations provision under § 2255(f)(3), which provides that § 2255 motions may be filed within one year of a retroactive change in the law as pronounced by the Supreme Court." Thompson, 2020 WL 1274217, at *3. Because the passage of the First Step Act is a change in the law and not a new fact under § 2255(f)(4), Merise's first ground for relief based on his deportable status is untimely.

Merise's first ground for relief also fails on its merits. He does not argue that the Court committed any error at the time of sentencing; he admits that the Court could not have taken into account, at that time, the specific disparities in how citizens and noncitizens would be treated under the First Step Act. See Mot. to Vacate at 13. Still, he asserts that his sentence has now become unlawful because of those new disparities. Merise cites no authority for his claim, and his suggestion that courts are required to constantly reassess and adjust a defendant's sentence when the severity of confinement, as compared to other defendants, changes over time flies in the face of "the usual finality of sentencing decisions." See United States v. Lafayette, 585 F.3d 435, 438

(D.C. Cir. 2009); see also Strickland v. Washington, 466 U.S. 668, 693 (1984) (noting "the profound importance of finality in criminal proceedings"). Moreover, in sentencing Merise, the Court did apply a six-month reduction based on the fortuitous increases in severity of confinement that deportable aliens may face. See Sentencing Hr'g Tr. [ECF No. 59] at 37:16–38:11. Thus, even if Merise's first ground for relief were timely under § 2255(f)(4), there is no legal basis for the argument, and the Court did in fact consider his deportable status in crafting an appropriate sentence.

Actual Innocence Exception

Next, Merise argues that his fourth ground for relief—that he "made his guilty plea unknowingly and unintelligently"—is timely because it "sounds in actual innocence," which is an exception to § 2255's statute of limitations. Mot. to Vacate at 5, 9. The Supreme Court has held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations." See McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). But the actual innocence standard is demanding: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." See id. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).

Here, defendant makes no specific allegations that he is factually innocent of the crime of hostage-taking, nor does he claim that there is any new evidence proving his innocence. Merise's "varied and voluminous assertions of misconduct or inadequacies on the part of . . . [his] defense attorney[]" or the Court at his plea hearing do not constitute "new evidence." Rodriguez v. United

States, No. 14 CIV. 4628 (CSH), 2017 WL 6404900, at *40 (S.D.N.Y. Dec. 13, 2017), aff'd, 767

Fed. App'x 160 (2d Cir. 2019).  And Merise's assertion that he lacked the requisite intent for aiding

and abetting is, likewise, not a showing of actual innocence.  See Sawyer v. Whitley, 505 U.S.

333, 339 (1992) (noting that actual innocence, or fundamental miscarriage of justice, exception "is

concerned with actual as compared to legal innocence"); United States v. Marandola, 372 F. Supp.

3d 7, 16 (D.R.I. 2019) (concluding that petitioner's allegation that elements of aggravated identity

theft were not satisfied "goes to legal sufficiency, not factual innocence").

The Court also notes that, at his plea hearing, Merise agreed under oath that the

government's factual proffer was correct and that he committed the crime.  "[R]epresentations of

the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by

the judge accepting the plea, constitute a formidable barrier in any subsequent collateral

proceedings."  Blackledge v. Allison, 431 U.S. 63, 73–74 (1977).  Such declarations "carry a strong

presumption of verity," and "subsequent presentation of conclusory allegations unsupported by

specifics is subject to summary dismissal, as are contentions that in the face of the record are

wholly incredible."  Id. at 74.[3]  Thus, Merise's fourth ground for relief does not sound in actual

innocence and remains barred by AEDPA's one-year statute of limitations.

---

[3] In his reply brief, Merise makes several additional assertions about the inadequacy of his plea colloquy, asserting, among other things, that the Court failed to inform him of his rights, including his right to a jury trial, and that the plea colloquy did not involve a description of the charges.  Reply Br. at 2–3.  But Merise's general allegations are contradicted by the record.  See Plea Hr'g Tr. [ECF No. 52] at 7:21–12:18 (Court informing defendant of his rights); 13:4–20:10 (Court and government describing the charges).

Merise also argues in his reply brief that he did not admit to the crime under oath because he lacked an interpreter during his interview with his Probation Officer.  Reply Br. at 5.  The Court clarifies that Merise was, in fact, provided with an interpreter at his plea hearing where he pled guilty under oath and agreed to the government's factual proffer.  See Plea Hr'g Tr. at 2:7–16.  The Court also notes that Merise signed a form acknowledging receipt of the Presentence Investigation Report and stating that there were no material or factual inaccuracies in the report.  See Receipt & Acknowledgment of Presentence Investigation Report [ECF No. 41].  Even today, Merise has not identified any alleged inaccuracies in the report.

Unconstitutional Suspension of the Writ

Finally, Merise contends that his arguments should not be dismissed as untimely because the one-year statute of limitations for first-time § 2255 motions is an unconstitutional suspension of the writ of habeas corpus. See Mot. to Vacate at 23–25. To qualify as such a suspension, AEDPA's statute of limitations must render the writ an inadequate and ineffective tool to test the legality of an individual's detention. See Swain v. Pressley, 430 U.S. 372, 381 (1977). Every court of appeals to address the issue has held that "AEDPA's one-year statute of limitations does not improperly suspend the writ of habeas corpus." Hill v. Dailey, 557 F.3d 437, 438 (6th Cir. 2009) (collecting cases); cf. Felker v. Turpin, 518 U.S. 651, 664 (1996) (holding that AEDPA's stringent restrictions on second habeas petitions do not run afoul of the Suspension Clause). "AEDPA's principal effect is to limit, rather than suspend, the writ by providing that those who fail to timely file a habeas petition forfeit the opportunity to do so." Wyche v. United States, 317 F. Supp. 2d 1, 12 (D.D.C. 2004).

## CONCLUSION

For the foregoing reasons, the Court concludes that Merise's § 2255 motion must be rejected as untimely. "Because the Court concludes that the defendant's § 2255 motion is untimely and fails as a matter of law for that reason, it need not hold an evidentiary hearing on the motion." United States v. Rice, 227 F. Supp. 3d 82, 86 (D.D.C. 2017). "[T]he motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." United States v. Morrison, 98 F.3d 619, 625 (D.C. Cir. 1996) (quoting 28 U.S.C. § 2255(b)). Merise's § 2255 motion will therefore be denied. A separate order will be issued on this date.

_____/s/_____

JOHN D. BATES
United States District Judge

Dated:  <u>April 21, 2020</u>