## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **v.** | **Criminal Action No. 06-42-1 (JDB)** |
| **LESLEY MERISE,** | |
| **Defendant.** | |

### MEMORANDUM OPINION AND ORDER

In 2007, this Court sentenced Lesley Merise to 238 months in prison for kidnapping an American girl in Haiti and holding her hostage for several days.  In May 2023, Merise filed a pro se motion for a sentence reduction, arguing that the length of this sentence, the risks of COVID-19, his harsh conditions of imprisonment, and his rehabilitation while incarcerated amount to "extraordinary and compelling" circumstances warranting his early release.  For the following reasons, the Court will deny the motion.

### Background

### I.    Merise's Criminal Offense

On or about September 26, 2005, Merise and three co-conspirators kidnapped a nine-year-old American girl from her family home in Port au Prince, Haiti, and held her hostage for nine days while demanding ransom from her parents.  See Statement of the Offenses [ECF No. 36-1].  The break-in was led by a man who previously worked for the family and felt he had been underpaid during his employment.  Id. at *1.  On the night of the home invasion, that man distracted the family dogs with food while the other three men, including Merise, entered with an imitation gun.  Id.  The men threatened the parents and bound them with ropes; then they grabbed cash, a watch, a pair of athletic shoes—and the couple's young daughter.  Id.  The girl, who suffered from

asthma and heart conditions, told the men she would die if they taped her mouth shut.  Id. at *1–2.  So, they blindfolded her and threatened to shoot her if she made any noise.  Id.

The kidnappers then stole away with the family car and carried the girl to a primitive shack.  Statement of the Offenses at *2.   Because this shack was exposed to the elements, Merise and another man later took the girl to further locations, including a remote mountain location accessible only by a two-hour hike.  Id.  The girl was told that her family would be murdered if she made noise, tried to escape, or told anyone she had been kidnapped.  Id.  The men, and specifically Merise, made calls to the victim's family demanding $200,000 for her return.  Id.  The family could afford at most $8,000.  Id.  Merise visited the girl routinely to put her on the phone with her parents as proof of life.  Id.

After several days, a hostage-taker who was caring for the girl allowed her outside to play.  Statement of the Offenses at *2.  There, she met an impoverished shepherd who persuaded her to write her family's phone number on a piece of paper with charcoal from an old fire pit.  Id.; Tr. of Sentencing Hr'g [ECF No. 59] ("Sentencing Tr.") at 10:5–21.  The shepherd hiked to a nearby town where he worked for one day at a brick-making factory to earn enough money to call the Haitian authorities.  Sentencing Tr. at 10:22–11:3.  Because of the shepherd's efforts, a joint mission of Haitian and United Nations police forces was able to rescue the girl from her captors after nine days in captivity.  Statement of the Offenses at *3.  Upon rescue, she was suffering from high fevers and diminished kidney function.  Sentencing Tr. at 11:17–19.  While those conditions were treatable, at the time of Merise's sentencing the girl still struggled with the psychological effects of the kidnapping, including post-traumatic stress disorder.  Id. at 11:19–21.

The FBI ultimately arrested four men involved in the abduction.  Statement of the Offenses at *3–4.  Merise was last to be apprehended after spending 18 months as a fugitive.  Sentencing Tr. at 18:10–24.  Once arrested, however, Merise cooperated by waiving extradition to the United

States.  Id. at 19:2–15.  On August 31, 2007, after concerns about his mental competency were resolved, see id., he pleaded guilty to one count of hostage taking and aiding and abetting, in violation of 18 U.S.C. §§ 1203(a) and 2.  Aug. 31, 2007 Min. Entry; see Judgment [ECF No. 44] at 1.  On December 10, 2007, this Court sentenced him to 238 months' incarceration, with credit for time served.  Judgment at 2.  This sentence was on the low end of the advisory 235 to 293 month Sentencing Guideline range.  See Sentencing Tr. at 6:4–9.

## II.    Merise's Incarceration

Merise, who is now 44 years old, has served approximately 199 months in prison on this offense.  See Ex. 2 to U.S.' Opp'n to Def.'s Mot. [ECF No. 71] ("Opp'n")  (Sentence Monitoring Computation Data) [ECF No. 71-2] at 1 ("Sentence Data").  He states in his motion that "during that entire time . . . [he has] attempted to better himself."  Mot. for a Sentencing Reduction/ Compassionate Release [ECF No. 67] ("Mot.") at 11.  The record appears to bear that out.

During his time in prison, Merise has maintained an excellent record of good behavior.  According to his disciplinary records, Merise has received only two low-level infractions: one in 2009 for refusing to obey an order and one in 2020 for being insolent to a staff member.  Ex. 4 to Opp'n (Inmate Discipline Data) [ECF No. 71-4]; see Opp'n at 23.  Merise has also taken numerous educational courses.  Although the parties dispute the amount of time he has spent on coursework, the evidence favors Merise's account.  The government contends Merise has taken only 472 hours of coursework, Opp'n at 23, but the education data they submitted records 1,871 hours of coursework, see Ex. 5 to Opp'n (Inmate Education Data Transcript) [ECF No. 71-5] at 1.  Merise claims he has taken even more classes which were not counted on the data sheet.  For example, he has provided a certificate of completion for a course on "traumatic strength and resilience," which was not included in his recorded coursework.  Mot. For Sentence Reduction/Compassionate Release [ECF No. 74] ("Reply") at 9;  Ex. 4 to Reply (Certificate of Completion).  Finally, Merise

advises the Court that he has spent eight years working in food service in the prison.  Mot. at 11.

He does not provide any documentary evidence to support this assertion, but the government does

not contradict it.

Merise submits that his time in prison has been exceptionally difficult, and that his record

of rehabilitation should be considered against the backdrop of the "torture he has endured by the

[Bureau of Prisons ("BOP")]."  See Reply at 9.  Merise alleges in his motion that "[e]ver since

[he] brought a sexual assault allegation against a BOP[] staff member . . . [he has suffered] [h]arsh

conditions that the Court could not have contemplated in doling out his initial sentence."  Mot. at

5-6.  He further claims he was "locked in a small room with 48 strangers for months on end,"

where gang members forced him to go on "hunger strike[s] [and abstain from eating the prison

food] even though [he] did not have enough food in his locker to provide for himself."  Id. at 11.

He even asserts that the 2020 report for insolence was concocted by him in hopes of getting placed

in solitary confinement to avoid this alleged torment.  Id. at 10.  The only documented evidence in

support of these claims is found in medical records the government submitted, which briefly

mention a sexual assault report from 2017.  Ex. 1 to Opp'n (Sealed BOP Medical Records) [ECF

No. 73] at 38 ("Medical Records").  The government does not address these allegations.

## III.    Merise's Petitions for Release

Merise never appealed his conviction or his sentence, but he has twice filed pro se motions

with this Court for post-conviction relief.  In June 2019, Merise moved to vacate, set aside, or

correct his sentence under 28 U.S.C. § 2255, alleging that the Court failed to consider his

deportable status at sentencing, that his trial counsel was deficient, and that he made his plea

unknowingly and unintelligently.  See United States v. Merise, Crim. A. No. 06-42-1 (JDB), 2020

WL 1930306, at *2 (D.D.C. Apr. 21, 2020).  The Court denied the motion as untimely.  Id. at *5.

In October 2021, Merise moved for a "downward departure," seeking immediate release or a

4

reduction in sentence based on similar allegations.  See United States v. Merise, Crim. A. No. 06-42-1 (JDB), 2022 WL 355207, at *2–3 (D.D.C. Feb. 7, 2022).  The Court construed the petition liberally to assert claims under 18 U.S.C. §§ 3624 and 3582(c), 28 U.S.C. § 2255, and United States v. Smith, 27 F.3d 649 (D.C. Cir. 1994), but ultimately concluded that the petition "fail[ed] to state a basis on which the Court could grant the relief."  Merise, 2022 WL 355207, at *1–3.

Due to his good time credits, Merise is currently scheduled for release on January 19, 2024.  Sentence Data at 2.  Because he is subject to a detainer from U.S. Immigration and Customs Enforcement and possible deportation following release, id., he is ineligible for release to home confinement, see Opp'n at 3.  On April 24, 2023, Merise mailed the Court a pro se motion for a sentence reduction and an application to proceed in forma pauperis, which was docketed on May 9, 2023.  See Mot. at 18–20.  Merise attached to his motion a copy of the request he allegedly made to BOP to file a petition for release, as well as certain medical records and requests to prison staff.  See Sealed Exs. to Mot. [ECF No. 68].  On July 18, 2023, the government filed a brief opposing Merise's request and appending Merise's prison data, including medical records filed under seal, and a sentence computation, inmate profile, discipline history, and educational history.  See Opp'n; Exs. to Opp'n.  On August 14, 2023, Merise mailed back a reply brief, which was docketed on September 26, 2023.  Attached to the reply was an additional copy of his request to the warden for compassionate release, a copy of his educational records, a page from his pre-sentence report, and a certificate he earned for a class he took in prison.  See Reply; Exs. to Reply.  The motion is now fully briefed and ripe for consideration.

## Legal Standard

Federal courts are generally prohibited from modifying a term of incarceration once it has been imposed.  United States v. Long, 997 F.3d 342, 347 (D.C. Cir. 2021).  This rule is subject to a "few narrow exceptions," including compassionate release.  Id.  Under the compassionate release

statute, a federal court may release a prisoner when "extraordinary and compelling reasons warrant" such relief. 18 U.S.C. § 3582(c)(1). On a prisoner-filed motion, such as here, the prisoner bears the burden of "establishing that he is eligible for a sentence reduction." United States v. Wyche, Crim. A. No. 89-36 (RCL), 2022 WL 2643568, at *3 (D.D.C. July 8, 2022).

Courts review prisoner-filed compassionate release petitions in three steps. See, e.g., Wyche, 2022 WL 2643568, at *3. First, the prisoner must demonstrate that he requested BOP to bring a petition for compassionate release on his behalf, and "fully exhausted all administrative rights to appeal a failure" or waited 30 days from "the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). Second, the prisoner must show that "extraordinary and compelling reasons warrant such a reduction." Id. § 3582(c)(1)(A)(i). That burden is substantial: "Cutting short a duly authorized prison sentence is, in the statute's own words, an 'extraordinary' step to take, and it requires a justification which is more than sympathetic and indeed nothing short of 'compelling.'" United States v. Shabazz, Crim. A. No. 17-43 (JDB), 2021 WL 4306129, at *3 (D.D.C. Sept. 22, 2021).

If those conditions are met, a court may "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)," only after considering the sentencing factors set forth in 18 U.S.C. § 3553(a). Id. § 3582(c)(1)(A). In revisiting the § 3553(a) factors, a court considers "whether the purposes of punishment that the court previously assessed (including public safety) would be impacted by the requested reduction—i.e., whether, despite the fact that a sentence reduction is warranted, [§] 3553(a)'s purposes of punishment require maintenance of the original prison term." United States v. Johnson, 464 F. Supp. 3d 22, 31 (D.D.C. 2020). [1]

---

[1] Merise argues that he is also eligible for release under D.C. Code § 24-403-04 "because [he] is serving time for D.C. Code offenses." Mot. at 14; see Reply at 2–3. Since Merise is serving time only for a federal offense, not a D.C. Code offense, this provision is inapplicable. Cf. United States v. Greene, 516 F. Supp. 3d 1, 13–18 (D.D.C.

## Analysis

### I.   Exhaustion of Administrative Remedies

Before reaching the merits of Merise's motion, the Court must first address the threshold question whether Merise exhausted his administrative remedies.  The requirement that a prisoner first exhaust his administrative remedies—either by appealing a denial of his petition or waiting 30 days from receipt—is a mandatory claims-processing rule.  United States v. Wilson, 77 F.4th 837, 841 (D.C. Cir. 2023).  This Court has held that the rule presents an "issue exhaustion" requirement such that a prisoner must raise each issue with BOP before he can obtain review in court.  United States v. Johnson, Crim. A. No. 02-310 (JDB), 2021 WL 3737681, at *3 (D.D.C. Aug. 24, 2021), aff'd, No. 21-3061, 2021 WL 5537704 (D.C. Cir. Nov. 17, 2021).

While the exhaustion requirement is mandatory, it is not jurisdictional.  Wilson, 77 F.4th at 841.  As a result, a court may "assume[] without deciding that [a defendant] properly exhausted as to each of his grounds for compassionate release."  Id.  And the government's failure to challenge the prisoner's evidence of exhaustion may result in waiver or forfeiture of the argument.  United States v. Muhammed, 16 F.4th 126, 130 (4th Cir. 2021); see also Johnson, 464 F. Supp. at 36 (excusing exhaustion requirement where administrative petition would be futile).

The parties dispute whether Merise submitted any request to BOP before filing the instant petition.  According to Merise, he handed such a request to the warden in the meal line on February 22, 2023.  Mot. at 13.  After waiting more than thirty days, he mailed the instant motion to the Court on April 24.  Id.  In support of these contentions, Merise submitted to the Court an "inmate request to staff" dated February 22, 2023, which requests that the warden "order [his] immediate release from prison o[r] file a motion on [his] behalf with the Court [for] release."  Sealed Exs. to

---

2021) (holding that when D.C. Code offenders are prosecuted in federal court, they are subject to the federal compassionate release statute of 18 U.S.C. § 3582(c)(1)(A), not the applicable D.C. Code provision).

Mot. at *1–2; Reply at *13–14 (Ex. 1).  The government apparently overlooked this document

because it erroneously asserts that "[d]efendant failed to attach this request as an exhibit."  Opp'n

at 15.  The government further contends that "BOP . . . has no record of defendant's request in the

grievance system" and the motion "does not indicate the basis for this alleged administrative

request."  Id.  Accordingly, the government argues that Merise "has not established that he has

exhausted his administrative remedies," id., but does not raise the secondary question whether, if

such a request were submitted, the issues were exhausted with BOP.

The Court observes that, even if the request was submitted to the warden, not all the

arguments raised in Merise's court motion were first raised in that request.  However, since the

government did not raise an issue exhaustion argument, and because the Court will ultimately

conclude on the merits that none of the circumstances urged in the motion is "extraordinary and

compelling," the Court will assume without deciding that the issues raised in the motion were

properly exhausted.  See Wilson, 77 F.4th at 841; United States v. Lawson, Crim. A. No. 03-282-

1 (JDB), 2022 WL 2663887, at *4 (D.D.C. July 11, 2022) ("[A] court need not resolve exhaustion

when, even assuming the defendant has properly exhausted his request, his motion fails on the

merits." (cleaned up)), aff'd, No. 22-3049, 2023 WL 4044609 (D.C. Cir. June 16, 2023).

Accordingly, this Court proceeds to the merits of Merise's claims.

## II.    "Extraordinary and Compelling Reasons"

An extraordinary reason must be "most unusual, far from common, and having little or no

precedent."  United States v. Jenkins, 50 F.4th 1185, 1197 (D.C. Cir. 2022) (internal quotation

marks omitted).  A compelling reason must be "both powerful and convincing."  Id. (quoting

United States v. Canales-Ramos, 19 F.4th 561, 567 (1st Cir. 2021).  "Courts . . . may consider

individualized factors such as 'the defendants' relative youth at the time of their offenses, their

post-sentencing conduct and rehabilitation, and the very substantial terms of imprisonment they

already served.'" Id. at 1200 (quoting United States v. McCoy, 981 F.3d 271, 288 (4th Cir. 2020)).

Extraordinary and compelling circumstances may arise from a single argument asserted or from

the combination of several arguments taken together.  See id. at 1197; United States v. Brooker,

976 F.3d 228, 238 (2d Cir. 2020).

The Court has a "duty to construe pro se filings liberally,"  United States v. Henry, 20 F.

Supp. 3d 278, 281 (D.D.C. 2014), and "holds such pleadings to less stringent standards than those

applied to pleadings drafted by lawyers," Douglas v. United States, 245 F. Supp. 2d 46, 47–48

(D.D.C. 2003).  See Mot. at 1.  Because Merise filed pro se, the Court considered each basis for

compassionate release that is arguably raised by his briefing.  Even applying this liberal approach,

however, the Court does not find any "extraordinary and compelling" reason or combination of

reasons that would support relief.

### A.  Sentencing Considerations

Merise claims he presents an extraordinary and compelling reason for release because he

is serving an unduly long sentence.  He argues that changes in sentencing law would result in a

shorter period of incarceration if he were sentenced today, and that this Court gave him a

disproportionately long sentence compared to his co-conspirators.  Neither of these claims supports

relief.

### i.  Changes in Sentencing Law

The Court will begin with Merise's claim that he would have received a shorter sentence

if he were sentenced today rather than in 2007.[2]  Merise asserts in his opening brief that he is

"subject[ed] . . . to a sentence that is more than . . . double the sentence he would receive[] if he

---

[2] The government does not identify and evaluate this argument from the briefing, but the Court will do so in the spirit of construing Merise's pro se motion liberally.

were sentence[d] today." Mot. at 6.[3]  In his reply brief, Merise adds that he "would not receive[]
the same length of sentence he received in 2007, because the sentencing table for kidnapping after
2007 was between 114 months to 180 months."  Reply at 6.

The Court is not aware of any change in the Sentencing Guidelines that would have affected
Merise's sentence.   If Merise were sentenced today, the exact same Sentencing Guidelines
calculation would apply.   The crime of kidnapping has a base offense level of 32.   Compare
Sentencing Tr. at 4:13–17, with U.S. Sent'g Guidelines Manual ("2021 USSG") § 2A4.1(a) (U.S.
Sent'g Comm'n 2021).   A six-level enhancement applies when the offense involved a ransom
demand; a two-level enhancement applies when a dangerous weapon was used; and a one-level
enhancement applies if the victim was held for more than seven days.  Compare Sentencing Tr. at
4:18–25, with 2021 USSG § 2A4.1(b).   Likewise, in 2007, as today, a defendant could obtain a
two-level decrease for acceptance of responsibility and a one-level decrease for timely provision
of information and notification of intent to enter a guilty plea.  Compare Sentencing Tr. at 5:12–
25, with 2021 USSG § 3E1.1.  Merise qualified for the above-listed enhancements and decreases.
Thus, Merise would have received an adjusted offense level of 38 and, because he had no criminal
history, a criminal history score of I whether he was sentenced in 2007 or today.  See Sentencing
Tr. at 6:4–5.  And this combination would result in a Sentencing Guidelines range of 235 to 293
months' incarceration, the same range he faced in 2007.  Compare Sentencing Tr. at 6:4–9, with
2021 USSG, ch. 5, pt. A.   Accordingly, nothing about the Sentencing Guidelines calculation
suggests Merise would have received a different sentence today.[4]  In any event, insofar as a change

---

[3] Merise also claims that he is "serving a mandatory [term] of twenty (20) years to life where . . . if he was
sentenced today . . . he would only face between 13 to 15 years mandatory minimum." Mot. at 12.  Because Merise
was not subject to any mandatory minimum sentence, the Court will not address this argument any further.

[4] Merise also suggests that the Court should weigh a downward trend in the median federal sentence for
kidnapping in favor of relief.  See Mot. at 7.  According to official statistics, the median sentence for kidnapping was
123 months in FY 2021, down from 156.5 months in FY 2007.  Compare FY 2021 Sourcebook of Federal Sentencing
Statistics, Sentence Imposed by Type of Crime tbl.15, https://perma.cc/4Q5F-GF6H; with Sourcebook of Federal

in the Sentencing Guidelines was not made retroactive, this argument is likely foreclosed by the D.C. Circuit's decision in <u>Jenkins</u>.  50 F.4th at 1198, 1200–01 (holding that nonretroactive changes in criminal statutes and legal precedents do not constitute "extraordinary and compelling" reasons for release).[5]  But the Court need not address the exact scope of the <u>Jenkins'</u> application to changes in the Sentencing Guideline, since Merise has not identified any applicable change in the Guidelines, much less an extraordinary and compelling one.

ii.  <u>Disparate Sentence Compared with Co-Conspirators</u>

Merise next claims that he received a disparate sentence compared with his co-conspirators. He notes that all three of his co-conspirators received shorter sentences than he did, and all have been released from prison.  Mot. at 6, 12.  The government argues that the logic of <u>Jenkins</u> bars a court from considering a disparity among co-defendants as an "extraordinary and compelling reason," and that Merise has not established that his co-defendants were similarly situated with respect to "relevant sentencing factors" to suggest the disparity was unwarranted.  Opp'n at 20–21.

The Court concludes that the sentencing disparity raised by Merise—which existed at the time of his sentencing—is not an extraordinary and compelling reason for release.[6]  In <u>Jenkins</u>, the D.C. Circuit held that "[l]egal errors at sentencing are neither extraordinary nor compelling" because a prisoner has other recourse—direct appeal or habeas petition—through which to pursue

---

Sentencing Statistics, Average Sentence Length in Each Primary Offense Category tbl.13, https://perma.cc/A7PP-YPZZ.  These statistics are of little significance to Merise.  His sentence of 238 months was already far above the median in 2007, because of the uniquely troubling characteristics of his crime.  <u>See</u> Sentencing Tr. at 4:20–25 (noting special offense characteristics of a ransom demand, a dangerous weapon, and kidnapping lasting more than seven days).  As discussed, those same considerations apply today.

[5] A proposed change to the Sentencing Guidelines, which would provide courts with the ability to consider changes in law as extraordinary and compelling reasons in certain circumstances, specifically excludes consideration of nonretroactive changes to the Sentencing Guidelines.  <u>See</u> USSG § 1B1.13(b)(6) (Proposed Amendment 2023).

[6] The Court recognizes that other disparities among co-defendants, which arise after sentencing, may not be equally prone to the logic of <u>Jenkins</u>.

his grievances, and because granting release on this basis would conflict with the procedures for modifying illegal sentences under Federal Rule of Criminal Procedure 35. 50 F.4th at 1200; see id. at 1200–02. The sentencing disparity asserted by Merise is like the legal error discussed in Jenkins because it was present at the time of his sentencing and Merise had a chance to appeal it immediately thereafter (but did not). Cf. United States v. Daniel, Crim. A. No. 17-233-5 (TNM), 2022 WL 17719570, at *2 n.3 (D.D.C. Dec. 15, 2022) (rejecting prisoner's argument based on a "disparity with prisoners properly sentenced under Winstead[,] [a decision regarding the career offender Sentencing Guidelines, because] . . . that is just another way of saying that there was an error in [the defendant's] sentence").

Indeed, the sentencing disparity at issue was known, discussed, and ruled on at Merise's sentencing. See, e.g., Sentencing Tr. at 29:11–16, 36:12–37:7. This Court found that the disparity between Merise's sentence and that of his co-defendants was "warranted rather than unwarranted" for two reasons. Id. at 37:7. First, Merise "was a planner and a major participant . . . he was involved in all aspects including the ransom calls and including the planning of th[e] offense." Id. at 36:18–24. Second, Merise "was the last apprehended and, therefore, has not provided information that would lead the government to be able to file a substantial-assistance motion." Id. at 36:25–37:3; see Opp'n at 21 (arguing that "defendant's sentence was based on his unique circumstances").

Merise has not identified any relevant factual or legal change that would allow the Court to reconsider that sentencing difference. As the Sixth Circuit has explained, "identifying 'extraordinary and compelling reasons' is a task that focuses on post-sentencing . . . developments." United States v. Hunter, 12 F.4th 555, 569 (6th Cir. 2021), cert. denied, 142 S. Ct. 2771 (2022); see also Setser v. United States, 566 U.S. 231, 242–43 (2012) (describing 18 U.S.C. § 3582(c)(1)(A) as a "mechanism for relief" when the "district court[] fail[s] to anticipate

developments that take place after . . . sentencing" (cleaned up)).  Compassionate release is a kind of "'safety valve' to reduce an otherwise-final sentence . . . , [but] it is not meant to provide movants with an opportunity to simply relitigate their sentencings."  United States v. Henry, Crim. A. No. 05-147, 2022 WL 2905057, at *2 (D. Md. July 22, 2022).  Merise's argument looks only backward—to an issue that was already litigated at his sentencing.  That issue is not an extraordinary or compelling reason for release now.

### B.  COVID-19

Merise separately argues that COVID-19 is an extraordinary and compelling circumstance that warrants his release because he is "particularly vulnerable to sever[e] illness related to COVID-19" due to a history of tuberculosis, mental health disorders, physical deterioration, shoulder and leg injuries, and bleeding from his teeth and gums.  Mot. at 4–5.[7]  He contends that the vaccination he received for COVID-19 "lessens but [does] not eliminate[] the risk of serious illness."  Id. at 5.[8]  The government responds that none of Merise's health conditions provide an extraordinary and compelling basis for relief.  See Opp'n at 15–19.

As the D.C. Circuit has explained, "a pandemic affecting not only the entire prison population, but the entire world, does not constitute an extraordinary and compelling reason" per se to grant compassionate release.  United States v. Jackson, 26 F.4th 994, 1002 (D.C. Cir. 2022).

---

[7] In his administrative request to the prison warden, Merise argued that the medical conditions he complains of on their own present extraordinary and compelling grounds for release.  Upon review of his briefing and medical records, the Court cannot conclude that any of these conditions are sufficiently serious on their own to warrant early release.  See 2021 USSG § 1B1.13 cmt. n.1 (providing guidance on medical conditions that may amount to an extraordinary and compelling reason, including "terminal illness," "serious physical or medical condition," "serious functional or cognitive impairment," and "deteriorating physical or mental health because of the aging process").

[8] Merise asserts that he would have filed this motion sooner if not for prison officials' refusal to provide copies of his medical records.  Mot. at 5.  Indeed, Merise supplies copies of no fewer than four requests for his medical records beginning in October 2020.  See Mot. at 4; Exs. to Mot. at *6–11.  The Court is concerned that officials in federal or federally contracted prisons refused to supply Merise with his medical records during a global pandemic.  Nevertheless, Merise's prior diligence does not substitute for a medical condition that provides an extraordinary and compelling ground for release.

Instead, a prisoner must demonstrate that he faces a particular risk of suffering severe illness or death should he contract COVID-19.  See, e.g., United States v. Morales, Crim. A. No. 06-248-4 (JDB), 2021 WL 4622461, at *4–5 (D.D.C. Oct. 7, 2021); see also Opp'n at 16 (acknowledging that a "chronic medical condition that has been identified as elevating the inmate's risk of severe illness or death from COVID-19" might satisfy the standard of extraordinary and compelling).  In light of the effectiveness of the COVID-19 vaccines, courts now set "an extremely high bar to establishing extraordinary and compelling reasons for a sentence reduction based on the risk of contracting COVID-19."  United States v. Clark, Crim. A. No. 10-133 (PLF), 2021 WL 5630795, at *4 (D.D.C. Dec. 1, 2021) (collecting cases).

In evaluating Merise's claim, the Court will consider his individual susceptibility to COVID-19 in light of Centers for Disease Control and Prevention ("CDC") guidance to determine if his risk of contracting COVID-19 poses an extraordinary and compelling reason to grant relief. See, e.g., Clark, 2021 WL 5630795, at *4.

Current CDC guidance provides that individuals are "more likely to get very sick from COVID-19" if they have certain conditions.  See People with Certain Medical Conditions, CDC, https://perma.cc/KFR2-ZZZT.  Of the conditions listed by the CDC, Merise asserts that he has depression and tuberculosis.  See id.; Mot. at 4.  However, there is little evidence that Merise currently suffers from these conditions, at least not in any acute way.  Accordingly, the Court concludes that this is not a basis for relief.  See Morales, 2021 WL 4622461, at *5 (deciding that prisoner's stable and well-managed health conditions did not support release).

Starting with Merise's alleged depression, medical records provided by the government indicate Merise was recently evaluated by a clinician and denied having any mental health symptoms.  Medical Records at 35.  Merise has accordingly been classified as Mental Health Care Level 1.  See id.; Ex. 3 to Opp'n (Inmate Profile) [ECF No. 71-3] at 1.  Merise does not provide

any evidence to rebut this assessment.  While there is evidence in the government's records that Merise previously suffered from mental health issues, it has been more than a decade since an acute issue was reported, see Medical Records at 36, and the Court cannot conclude that Merise is suffering from depression that would put him in great danger of severe COVID-19.

Likewise, Merise's claim that he is suffering from tuberculosis is undermined by the medical records provided by the government.  It is true that the records suggest Merise has been exposed to tuberculosis in the past, Medical Records at 28, and that he has previously had a positive skin test, id. at 22.  But such tests are not conclusive that a person has the disease, and may indicate that a person has latent, not active, tuberculosis.  See id. at 45; Testing for TB Infection, CDC, https://perma.cc/7VXJ-LQDD.  Most crucially, Merise's medical records indicate he received a clear chest x-ray as recently as March 2022, Medical Records at 3, 46, and has not recently reported or been diagnosed with any respiratory problems, see id. at 8.  The evidence does not support Merise's contention that he is suffering from tuberculosis that would make him especially susceptible to severe COVID-19.

Moreover, as the government points out, Merise has been vaccinated against COVID-19. See Opp'n at 17.  According to his medical records, Merise received two doses of the Pfizer-BioNTech vaccine in March and April 2021, followed by a booster dose of the Moderna vaccine in June 2022.  Medical Records at 20; see Mot. at 5 (acknowledging vaccination status).  As numerous courts have recognized, the mRNA vaccines have proven extremely effective at preventing severe illness or death across populations and this fact must be weighed against any assertion a prisoner makes as to his susceptibility to COVID-19.  See, e.g., Clark, 2021 WL 5630795, at *4; see also COVID-19 Vaccine Effectiveness Update, CDC, https://perma.cc/W9ES-R7AJ.  Merise has not provided any evidence that the vaccine would be ineffective for him.

Accordingly, the Court cannot conclude that COVID-19 presents an extraordinary and compelling reason to release Merise.

### C.  Conditions of Imprisonment

Merise argues that the conditions under which he has served his sentence have made it "more punitive than it would be otherwise," and that this constitutes a basis for relief.  Mot. at 16; see id. at 5–6.[9]  Merise does not directly cite any cases in support of this argument, and therefore, the Court must follow the general guidance offered by the D.C. Circuit to focus on reasons that are "most unusual, far from common, and having little or no precedent" and are "both powerful and convincing."  Jenkins, 50 F.4th at 1197 (internal quotation marks omitted).  The Court i.s concerned about Merise's allegations, described above, about being sexually assaulted in prison and being forced to endure hunger strikes.  Merise is correct that the conditions he alleges are not part of the sentence that this Court intended to impose.  However, Merise's allegations are only vaguely described, and he has not produced (although the Court appreciates the difficulty in doing so) any evidence beyond his own allegations in support of these claims.  Ultimately, the Court finds that his unsupported allegations—assuming their truth—weigh slightly in favor of relief but do not support a finding of extraordinary and compelling circumstances on their own.[10]

### D.  Rehabilitation

Finally, Merise argues that his rehabilitation provides an extraordinary and compelling basis for release.  See Mot. at 11–12, 15.  The government, in its brief, addresses rehabilitation only as part of the § 3553(a) factors.  See Opp'n at 23.  In that context, the government contends

---

[9] The government does not acknowledge this argument as a separate basis for relief, but the Court will as part of its effort to construe Merise's motion liberally.

[10] There is reason to believe these trials may be behind Merise.  With respect to the hunger strike, those incidents allegedly took place at Reeves County Detention Center, see Mot. at 11, from which he was transferred in May 2022, see Medical Records at 35.  The Court is not sure where the alleged sexual assault occurred, but according to the records, it was reported more than six years ago.  See Medical Records at 38.

that Merise's "disciplinary history while incarcerated does not weigh against early release," but that his "limited" "participation in educational programming" does.  Id.

The Court may not release a prisoner based on rehabilitation alone.  See 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."); see also Lawson, 2022 WL 2663887, at *14; Brooker, 976 F.3d at 237–38.  However, courts "may . . . consider a defendant's rehabilitation in combination with other reasons warranting a sentence reduction."  Lawson, 2022 WL 2663887, at *14.  The Court recognizes that Merise has "attempted to better himself" while serving his term of incarceration.  Mot. at 11.  The Court commends Merise on his disciplinary history, his participation in programming, and his maintenance of a job while in prison.  Merise's conduct in prison suggests that he will live a productive life when he is released in less than four months.  Accordingly, the Court finds that his prison record weighs slightly in favor of release.

*      *      *

In sum, the Court concludes that the harsh conditions alleged by Merise and his rehabilitation weigh somewhat in favor of release.  However, "[c]utting short a duly authorized prison sentence is, in the statute's own words, an 'extraordinary' step to take, and it requires a justification which is more than sympathetic and indeed nothing short of 'compelling.'"  Shabazz, 2021 WL 4306129, at *3.  The Court cannot conclude on this record that those two considerations taken together amount to an extraordinary and compelling basis for release from prison.

## Conclusion

Because Merise has not met his burden of demonstrating any extraordinary and compelling reason for compassionate release, the Court will deny relief.  The Court need not discuss the 18 U.S.C. § 3553(a) factors in detail, as "an inmate may not be granted compassionate release without a finding of an extraordinary and compelling reason, no matter how the § 3553(a) factors shake

17

out." <u>Shabazz</u>, 2021 WL 4306129, at *6.  Suffice it to say that this Court imposed the sentence with fulsome consideration of the § 3553(a) factors—Merise's extremely "serious," "heinous," and "horrible" offense conduct, Sentencing Tr. at 32:19–33:9, the "difficult circumstances" and "mental health issues that Mr. Merise has faced," <u>id.</u> at 33:10–17, and the impact on the victim and her family, <u>id.</u> at 34:22–35:5.  The Court's sentence reflected all these considerations.  Because Merise has not given the Court any reason to diverge from its former assessment, his motion will be denied.

*      *      *

For the foregoing reasons, and upon consideration of the entire record herein, it is hereby

**ORDERED** that [67] defendant's application to proceed in forma pauperis is **GRANTED**; and it is further

**ORDERED** that [67] defendant's motion for a sentence reduction is **DENIED**.

**SO ORDERED**.

/s/<br>JOHN D. BATES<br>United States District Judge

Dated: <u>October 17, 2023</u>